UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━

DEBORAH A. GREEN,

                        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**Decision and Order**

19-CV-456-HBS
(Consent)

━━━━━━━━━━━━━━━━━━━━━━━━━━━

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, cited hereafter as "Tr."), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 10. Plaintiff Deborah A. Green challenges the final decision of the Commissioner of Social Security (the "Commissioner") that she is not entitled to Disability Insurance Benefits under Title II or Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on the papers under Rule 78(b).

## II.   LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and

citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing the Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner

2

merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III.   DISCUSSION

Green's appeal concerns the ALJ's analysis of her mental impairments. At step two of the sequential inquiry, the ALJ concluded that Green suffered from a variety of severe physical

impairments, but that her mental impairments—*i.e.*, depression and anxiety—were non-severe. *See* Tr. 18-19; *see also Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) (stating that an impairment is "non-severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work"). Then, in making the RFC determination, the ALJ included no functional limitations related to those mental impairments. *See* Tr. 20. The ALJ instead determined that Green could perform sedentary work with some additional physical restrictions. *Id.* In analyzing Green's mental impairments, the ALJ relied heavily on the opinion of consultative psychiatric examiner Janine Ippolito, Psy.D. *See* Tr. 26.

On appeal, Green contends that the ALJ erred because, despite purporting to rely on Dr. Ippolito's opinion, he failed to incorporate a restriction Dr. Ippolito identified. Specifically, Dr. Ippolito opined that Green is mildly limited in her ability to "appropriately deal with stress." Tr. 422. Green notes that the ALJ did not include any stress-related limitations in the RFC. In her view, this constitutes error, as the ALJ was "required to either include the limitation into the [RFC] findings . . . or explain why it was not included." Dkt. No. 9-1 at 11.

The Court concludes that the ALJ did not err. This is because the RFC determination and Dr. Ippolito's opinion can be reasonably read as consistent. Granted, Dr. Ippolito does state that Green is mildly limited in her ability to deal with stress, but it bears noting that terms like "mild" are, standing alone, quite vague. *See, e.g.*, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (subsequent history omitted). Such terms must be interpreted and understood in light of

5

"the surrounding context" that gives them "a concrete meaning." *Spencer v. Comm'r of Soc. Sec.*, No. 19-CV-6053, 2020 WL 3542126, at *4 (W.DN.Y. June 20, 2020). As a result, the Court must look at Dr. Ippolito's evaluation as a whole to discern what the "mild" limitation means in substance.

In her evaluation, Dr. Ippolito noted that Green was unemployed at the time and working on her Master's degree. Tr. 419. Green reported no significant psychiatric history beyond a prescription for depression. *Id.* Green stated that she was then suffering from a depressed mood, tearfulness, and irritability due to "recent stressors," which included "difficulty finding work, financial problems, and having most of her possessions stolen from her." Tr. 420. Green reported no anxiety-related symptoms, panic attacks, or thought disorder. *Id.* Dr. Ippolito observed during the mental status examination that, although her mood was dysthymic, Green was alert, coherent, goal-directed, and appropriate in speech, thought, insight, and judgment. Tr. 420-21. Green also reported that she was able to engage in a variety of daily activities, including cooking, cleaning, doing laundry, and maintaining family relationships. Tr. 421.

Dr. Ippolito concluded that there was "no evidence of limitations" with respect to Green's ability to perform simple and complex tasks, make appropriate decisions, relate adequately to others, and maintain a regular schedule. *Id.* Dr. Ippolito also opined that Green "can appropriately deal with stress with [m]ild limitations," but she noted that "[t]hese limitations are due to her *current emotional distress*." Tr. 422 (emphasis added). Dr. Ippolito

6

diagnosed Green with an "[a]djustment disorder with depressed mood," stating that Green's psychiatric problems did "not appear to be significant enough to interfere with [her] ability to function on a daily basis." *Id.*

Thus, read in context, it appears that by a "mild" stress-based limitation, Dr. Ippolito meant that Green was facing some difficulty in handling certain stressors outside of work—unemployment, financial problems, etc.—rather than that Green was limited in her ability to handle stress in the workplace.[1] This is consistent with Dr. Ippolito's notation that the stress-related limitation was due to "current emotional distress." Tr. 422. Furthermore, Green did not report that she suffered from any stressors relevant to the workplace. *See* Tr. 420.

Therefore, contrary to Green's argument, the ALJ's RFC determination and Dr. Ippolito's opinion are consistent, insofar as neither identifies a *workplace* restriction related to stress. That is the type of stress that is relevant to an RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC determination relates to what a claimant can do "in a work setting"); *see also* Titles II & XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, S.S.R. 85-15, 1985 WL 56857, at *5 (Jan. 1, 1985) (stating that stress is to be analyzed based on the claimant's ability "to adapt to the demands or 'stress' of the workplace").

---

[1] The ALJ's reasoning on this issue is not fully explicit, but the decision as a whole permits the Court to glean his rationale. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Accordingly, Green has not persuaded the Court that remand is warranted in her case.

## IV. CONCLUSION

For the reasons discussed herein, the Court grants the Commissioner's motion (Dkt. No. 10) and denies Green's cross-motion (Dkt. No. 9). The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 14, 2020